UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

CHRISTOPHER NELDNER, II, Individually and
on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

ALLIED INTERSTATE LLC,

        Defendant.

Case No.: 15-cv-327

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Christopher Neldner, II, is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a student loan.

5. Defendant Allied Interstate LLC ("Allied") is a Minnesota limited liability company with its principal place of business located at 12755 Hwy 55, Suite 300, Plymouth, MN 55441.

6. Allied is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Allied is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Allied is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

8. On or around April 15, 2014, Allied mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "Sallie Mae Inc." ("Sallie Mae"). A copy of this letter is attached to this complaint as Exhibit A.

9. The alleged debt identified in Exhibit A was an alleged student loan, allegedly owed to Sallie Mae and used only for personal, family or household purposes.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

## Ambiguous and Confusing Statements in Exhibit A

11. Exhibit A purports to extend a settlement offer to Plaintiff of 50.4% of the "Amount Due."

12. Exhibit A also contains the following text:

> To take advantage of the settlement offer outlined above we must receive your payment at the post office box referenced below no later than the close of business on 05/14/2014. After that time, we reserve the right to modify the settlement offer, or revoke the offer in its entirety. This is a limited opportunity and contingent upon the clearance of your good funds.

Exhibit A.

13. Statements to the effect that a settlement offer may expire on a specific date, or that payments received after that date may not be eligible for that settlement offer, or that the debt collector and/or creditor may or may not revoke or modify the settlement offer after a date certain, are ambiguous, false, misleading and confusing to the unsophisticated consumer.

2

14. The language in Exhibit A: "After that time [the purported deadline], we reserve the right to modify the settlement offer, or revoke the offer in its entirety" is ambiguous and confusing to the unsophisticated consumer.

15. Stating that Defendants reserve the right to "modify" or revoke the settlement, but not specifying *how* it would "modify" the settlement or whether it actually would modify or revoke the settlement, is facially ambiguous and confusing.

16. The unsophisticated consumer would have no idea what Defendants mean by this language, or how a payment applied after the "deadline," even if sent before that date, would be applied to the alleged amount owed.

17. This is especially true when, as here, Exhibit A purports to require that the payment be "receive[d] … at the post office box … no later than the close of business on 05-14-2014." It is ambiguous whether a payment is "received at a post office box" when it arrives at the post office and is put into the PO Box or when Allied picks up its mail. It is unclear what happens if Allied does not pick up its mail at "the close of business" but waits until the next business day.

18. Thus, a consumer who sends a payment just prior to the "deadline" would have no idea how much, if anything, the creditor and debt collector claim he or she owes after the payment is applied.

19. The difference is significant. In Plaintiff's case, for example, if he sent a payment of $69,309.26 (the "settlement amount" specified in Exhibit A) a few days before May 14, 2014, he would not know whether he owed nothing, or $68,106.19, possibly plus interest, as the alleged debt is a student loan, or any amount between those numbers, chosen at Defendant's whim.

3

20. Further, in this case, Defendant's statement: "After that time [the purported deadline], we reserve the right to modify the settlement offer, or revoke the offer in its entirety" is demonstrably and materially false.

21. Allied subsequently sent Plaintiff a similar "settlement" letter.

22. On or around May 19, 2014, Allied mailed a debt collection letter to Plaintiff regarding the same alleged debt as described in Exhibit A. A copy of this letter is attached to this complaint as Exhibit B.

23. Exhibit B offers to reduce Plaintiff's interest rate to 0.001% for the full term of the repayment agreement, to "save $7,953.09 per year, and $132,551.50 in total."

24. Upon information and belief, the sending of Exhibit A and Exhibit B to class members is processed in bulk as part of a scripted collection plan, not on a case-by-case or person-by-person basis.

25. Upon information and belief, Allied knew, before Exhibit A was mailed to the class, that Allied would send Exhibit B approximately one month after Exhibit A, if a class member did not respond to Exhibit A.

26. At the time Allied mailed Exhibit A to the class, Defendant intended to send Exhibit B to consumers who did not respond to Exhibit A, despite the claim that the first offer was time-limited.

27. Thus, the statement on Exhibit A: "After that time [the purported deadline], we reserve the right to modify the settlement offer, or revoke the offer in its entirety," was actually false, as Defendant knew it would almost immediately send another "settlement offer," Exhibit B, and that the original offer would not actually be "revoked."

**False Statements in Exhibits A and B – Settlement Amount Is Available At Any Time**

28. Further, the statement: "After that time [the purported deadline], we reserve the right to modify the settlement offer, or revoke the offer in its entirety," is also false and misleading because, upon information and belief, Allied would accept a settlement of a reduced interest rate or 50% of the "Amount Due" on a defaulted debt at any time.

29. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit. *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

### Defendant Failed To Employ The Safe Harbor Language

30. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d at 775-76.

31. Defendant did not use the safe harbor language in Exhibits A or B.

32. Upon information and belief, the "deadline" to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

33. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

5

34. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

35. Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

### COUNT I – FDCPA

36. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

37. The statement in Exhibits A and B: "After that time, we reserve the right to modify the settlement offer, or revoke the offer in its entirety," is false, misleading, confusing and ambiguous.

38. The false statements to the effect that the settlement offer is limited-time opportunity and that it may be revoked or modified after a specific date, create ambiguity in the amount that a consumer owed after sending a payment, especially when that payment is sent shortly before the deadline.

39. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

### COUNT II – FDCPA

40. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

41. The statement in Exhibit A: "After that time, we reserve the right to modify the settlement offer, or revoke the offer in its entirety," is facially false.

42. Before Defendant sent Exhibit A to the class, Defendants knew that they would shortly thereafter send Exhibit B to the class members who did not respond to Exhibit A.

43. Thus, the "deadline" and above statements in Exhibit A were false and misleading to the unsophisticated consumer.

44. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

6

## COUNT III – FDCPA

45. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

46. The "deadline" and statement: "After that time [the purported deadline], we reserve the right to modify the settlement offer, or revoke the offer in its entirety," are also false and misleading because Allied would accept a settlement of a reduced interest rate repayment agreement or 50% of the "Amount Due" at any time.

47. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## CLASS ALLEGATIONS

48. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits A or B, (c) seeking to collect a debt, (d) incurred for personal, family or household purposes, (e) on or after March 24, 2014, (f) that was not returned by the postal service.

49. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

50. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692f.

51. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

52. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

53. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

54. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 24, 2015

**ADEMI & O'REILLY, LLP**

By: /S/ Mark A. Eldridge
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com